Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 CR 852 - ALL | DATE | FEB. 13, 2002 |
| CASE TITLE | UNITED STATES OF AMERICA v. FRANK L. PEITZ, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for February 20, 2002 at 11:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants Loutos's and Paladino's motion to compel production [48-1] is denied without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 7 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 1 4 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 62 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 2/13/2002 date mailed notice | |
| cw | courtroom deputy's initials | 02 FEB 13 PM 5:09 Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 01 CR 852 |
| FRANK L. PEITZ, DANIEL B. BENSON, PETER A. LOUTOS, SR., ROBERT D. PALADINO, RANDALL W. LAW, and MONICA M. ILES, | ) |
| Defendants. | ) |

DOCKETED
FEB 1 4 2002

## MEMORANDUM OPINION AND ORDER

The indictment in this case alleges:

defendants FRANK PEITZ, DANIEL BENSON, PETER LOUTOS, ROBERT PALADINO, RANDALL LAW, MONICA ILES and others, through FLP Capital, Active International[, Inc.] and Lennox [Investment Group, Ltd.], sought to and did obtain and retain funds from prospective investors and investors by offering and selling investments purportedly in the international trading of bank financial instruments. In offering and selling these investments, the defendants made and caused to be made material misrepresentations and omissions about, among other things: the risk involved in the investment; the expected return on the investment; the use of money raised from investors; and the previous investment experience and the criminal and regulatory background of those offering and selling the investment. As a part of the scheme, the defendants raised over $11,000,000 from at least 30 investors and then misappropriated almost all of the funds for their own benefit. In order to retain the use of investors' funds and obtain additional funds from new investors and to conceal various parts of the scheme from victim investors and others, defendants continued to lull investors through a series of misrepresentations and omissions about the nature and status of their investments as

> well as by repaying earlier, disgruntled
> investors with funds from new investors.

Indictment ¶ 3.

All six defendants are charged with eight substantive counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. The alleged wire communications underlying these counts occurred from October 10, 1996 through May 22, 1997. Defendants Peitz, Benson, Loutos, and Paladino are also charged with a conspiracy in violation of 18 U.S.C. § 1956(h) under which they agreed to (1) engage in wire fraud violations that were designed to conceal the source and ownership of unlawful proceeds in violation of 18 U.S.C. § 1956(a) and (2) engage in monetary transactions in criminally derived property with a value greater than $10,000 in violation of 18 U.S.C. § 1957(a). The conspiracy allegedly began no later than October 1994 and continued until at least June 1998. The four alleged conspirators are also charged with four substantive counts of violating 18 U.S.C. §§ 1957 and 2 and two substantive counts of violating 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

In June 1998, the Securities and Exchange Commission ("SEC") filed a civil action in the Northern District of Texas alleging that certain defendants had defrauded investors utilizing a fictitious "prime bank security" investment scheme that never existed. Law, Iles, Peitz, and Benson were named as defendants in that action, as well as was James Wardell. Paladino and various entities were named as relief defendants. A

judgment was obtained against all defendants and relief defendants and Michael Quilling was appointed as receiver to obtain and conserve funds on the investors' behalf. When the indictment was returned in the present case, the SEC issued a litigation release stating "[t]he indictment is based on the same conduct alleged in a civil action brought by the Commission's Forth Worth District Office in June of 1998."

Loutos's current counsel represents that he has been informed by the lead SEC attorney in the civil action that the SEC attorney made written findings that certain conduct of Loutos did not violate the securities laws. It is further represented that the SEC attorney and Quilling told counsel that they had established no criminal conduct on Loutos's part. Loutos and Paladino also contend that it is likely that the SEC investigators forwarded to the prosecution recommendations and/or findings that Loutos and Paladino did not engage in criminal conduct or at least that the SEC referred the case to the Department of Justice for the Department of Justice's consideration of criminal charges. Pending is Loutos's and Paladino's motion to compel the prosecution to disclose documents in the possession of Quilling as well as investigatory documents and findings of the SEC.

In response, the prosecution represents: "the government neither possesses nor conceals" any "documents relating to mental impressions of the receiver and Securities and Exchange Commission employees concerning the guilt or innocence of the

defendants." The court understands this to mean that the United States Attorney's office does not have immediate possession of any such documents. The prosecution's response is silent as to whether the SEC made a referral regarding this case, whether SEC employees are providing assistance in the present prosecution, and whether, even if not in their immediate possession, the prosecutors have seen the SEC investigatory file and/or have access to or control over it. The prosecution also contends that, even if it had the documents, it should have no obligation to provide them to defendants because defendants have been granted the early return of subpoenas and therefore can obtain any nonprivileged documents directly from the SEC and receiver. Further, the prosecution contends that testimony of Quilling or an SEC employee that he or she believed a defendant had not committed a crime would not be admissible evidence.

On postjudgment, collateral, and appellate review, the law is well established that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). See also Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bagley, 473 U.S. 667 (1985); Giglio v. United States, 405 U.S. 150 (1972); United States v. Reyes, 270 F.3d 1158, 1165 (7th Cir. 2001); Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001); United States v. Morris, 80 F.3d 1151, 1168-69 (7th Cir.), cert. denied, 519 U.S. 868 (1996).

Evidence is favorable if it "is either exculpatory in nature or tends to impeach a prosecution witness." Reyes, 270 F.3d at 1167. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682. Accord Reyes, 270 F.3d at 1166 (quoting Lieberman v. Washington, 128 F.3d 1085, 1092 (7th Cir. 1997)).

The usual formulation of the Brady standard, however, is designed for review after the trial or sentencing and understandably considers the probable effect on the verdict or sentence. On a pretrial discovery motion, however, the standard is necessarily somewhat different. United States v. Glover, 1995 WL 151823 *2 (N.D. Ill. April 4, 1995); United States v. Sudikoff, 36 F. Supp. 2d 1196, 1198-99 (C.D. Cal. 1999). In the pretrial context, "the government is obligated to disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case," with doubt as to usefulness resolved in favor of disclosure. Sudikoff, 36 F. Supp. 2d at 1199. See also Glover, 1995 WL 151823 at *2. Disclosure, however, is still limited to exculpatory or impeachment evidence that would likely be admissible at trial or be likely to lead to admissible evidence. Sudikoff, 36 F. Supp. 2d at 1199-1200. There is no obligation to disclose information solely because it would be helpful in preparing the

defense of the case; it must be potential exculpatory or impeachment evidence. Id. at 1200-01.

As to the potential evidence presently in dispute, the issue also arises as to the prosecution's obligation to provide information that is in the possession of other government entities. "As a general rule, the government's obligation to disclose exculpatory or impeachment information under Brady is limited to that information which is then known to the government." Morris, 80 F.3d at 1169. While the prosecution is not required to affirmatively seek out information not in its possession, it is "improper for a prosecutor's office to remain ignorant about certain aspects of a case or to compartmentalize information so that only investigating officers, and not the prosecutors themselves, would be aware of it." Id. Information known by investigators that are considered to be members of the prosecution team is deemed to be known by the prosecution. Id. There is "a duty on individual prosecutors 'to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" Id. (quoting Kyles, 514 U.S. at 437). The prosecutor's office, however, does not have a duty "to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." Morris, 80 F.3d at 1169.

Additionally, where the evidence is otherwise available to the defendant through the exercise of reasonable diligence, the prosecution does not violate Brady by failing to disclose the

evidence. Id. at 1170; Boss, 263 F.3d at 740. Reasonable diligence, though, has its limits. As to documents obtainable by the defendant through reasonable diligence, the prosecution generally will have no duty to disclose. Boss, 263 F.3d at 741. In Boss, though, the Seventh Circuit held that reasonable diligence generally does not encompass the expectation that a defendant who has the opportunity to interview a prosecution witness will be able to obtain as much information about the witness's potential testimony as would the prosecution. See id. at 740-43. "In cases like the present one, the question is whether defense counsel had access to Brady material contained in a witness's head. See, e.g., Crivens v. Roth, 172 F.3d 991, 997 (7th Cir. 1999). Because mind-reading is beyond the abilities of even the most diligent attorney, such material simply cannot be considered available in the same way as a document." Boss, 263 F.3d at 741. Similarly, even if a government regulatory agency is not part of the prosecution team itself, it may more readily share information with the prosecution than with a defendant.

In response to defendants' motion to compel, the prosecution has not explained its relationship with the SEC and Quilling. The prosecution also has not stated whether it has any knowledge of any SEC document stating the SEC's views as to Loutos's and Paladino's criminal culpability. On the information presently before the court, it cannot be determined whether the SEC or any SEC employees should be considered part of the

prosecution team. Due to the lack of information, it also cannot be determined whether Quilling is part of the prosecution team, but it is highly doubtful that a receiver would be part of the prosecution team. Additionally, without more information as to their relationship with the prosecution, it cannot be determined whether any statements of SEC employees or Quilling would, as defendants contend, be admissible against the government under Fed. R. Evid. 801(d)(2). But even if the statements themselves are not admissible, the grounds for those persons concluding Loutos and Paladino were not criminally culpable may be based on or lead to exculpatory or impeachment evidence not otherwise known to defendants. It is clear, however, that defendants' broad request for all the SEC investigatory files and, apparently, a substantial number of documents possessed by Quilling goes beyond the requirements of Brady. As previously discussed, Brady is limited to exculpatory or impeachment evidence.[1] It is unlikely that all the documents requested by defendants contain such material.

---

[1] In their reply, defendants make passing reference to the prosecution's obligations under Fed. R. Crim. P. 16(a)(1)(C). While that Rule is not limited to exculpatory or impeachment evidence, it is limited to documents in the prosecution's possession and does not include information that is simply known to the prosecution. See United States v. Hamilton, 107 F.3d 499, 509 n.5 (7th Cir.), cert. denied, 521 U.S. 1127 (1997). Possession by the prosecution includes the entire prosecution team, but not government agencies that are not part of the prosecution team. See United States v. Volpe, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999). Since raised for the first time in the reply, the applicability of Rule 16 will not be determined. It is expected, however, that the prosecution will fully comply with its obligations under Rule 16, including, in light of today's ruling, reconsidering the possible application of Rule 16 to the documents at issue.

On the information presently before the court, it cannot be determined whether the SEC, any of its employees, or Quilling are part of the prosecution team. Nor can it be determined whether the prosecution team otherwise has knowledge or control of the pertinent documents or potential witnesses. However, it would appear that, with reasonable diligence, defendants will be able to obtain all or most of the pertinent documents through the use of subpoenas. Defendants' motion to compel will be denied without prejudice to bringing any appropriate motion after they have received responses to the subpoenas.[2] In the meantime, however, the prosecution should also review the information and evidence it has in light of the standards set forth above, particularly those standards stated in Boss, 263 F.3d at 740-43, and Sudikoff, 36 F. Supp. 2d at 1199-1201.

IT IS THEREFORE ORDERED that defendants Loutos's and Paladino's motion to compel production [48-1] is denied without

---

[2]In the event there is a later Rule 16 or Brady motion, any response by the prosecution must provide sufficiently specific facts regarding both the prosecution's relationship with other pertinent agencies and the prosecution's knowledge of any documents or evidence at issue. To the extent the government has knowledge or possession of potential Brady materials that are withheld as privileged, it may have to provide such documents for an in camera inspection. See Pennsylvania v. Ritchie, 480 U.S. 39 (1987); United States v. Hach, 162 F.3d 937, 947 (7th Cir. 1998), cert. denied, 526 U.S. 1103 (1999); United States v. Bastanipour, 41 F.3d 1178, 1181-82 (7th Cir. 1994).

prejudice. Status hearing will be held on February 20, 2002 at 11:00 a.m.

    ENTER:

                      /s/ William T. Hart
                      UNITED STATES DISTRICT JUDGE

DATED: FEBRUARY 13, 2002