# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 852 - 3 | **DATE** | MARCH 21, 2002 |
| **CASE TITLE** | UNITED STATES OF AMERICA v. FRANK L. PEITZ, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion to quash subpoenas <u>duces tecum</u> [66] is denied. Defendant Loutos's motion for evidentiary hearing and/or in-camera inspection is denied without prejudice. Defendant Loutos's motion to produce pursuant to Rule 16 and/or <u>Brady v. Maryland</u> is denied without prejudice. By April 10, 2002, the Securities and Exchange Commission or one of its subordinates upon whom a subpoena was served shall respond as described in today's Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 7 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | MAR 22 2002 date docketed | 76 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 3/21/02 date mailed notice | |
| | Copy to judge/magistrate judge. | | |
| cw courtroom deputy's initials | | 02 MAR 21 PM 2:14 U.S. DISTRICT COURT CLERK Date/time received in central Clerk's Office | mqm mailing initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
v. ) No. 01 CR 852
)
FRANK L. PEITZ, DANIEL B. )
BENSON, PETER A. LOUTOS, SR., )
ROBERT D. PALADINO, RANDALL W. )
LAW, and MONICA M. ILES, )
)
        Defendants. )

DOCKETED MAR 2 2 2002

## MEMORANDUM OPINION AND ORDER

The indictment in this case alleges:

defendants FRANK PEITZ, DANIEL BENSON, PETER LOUTOS, ROBERT PALADINO, RANDALL LAW, MONICA ILES and others, through FLP Capital, Active International[, Inc.] and Lennox [Investment Group, Ltd.], sought to and did obtain and retain funds from prospective investors and investors by offering and selling investments purportedly in the international trading of bank financial instruments. In offering and selling these investments, the defendants made and caused to be made material misrepresentations and omissions about, among other things: the risk involved in the investment; the expected return on the investment; the use of money raised from investors; and the previous investment experience and the criminal and regulatory background of those offering and selling the investment. As a part of the scheme, the defendants raised over $11,000,000 from at least 30 investors and then misappropriated almost all of the funds for their own benefit. In order to retain the use of investors' funds and obtain additional funds from new investors and to conceal various parts of the scheme from victim investors and others, defendants continued to lull investors through a series of misrepresentations and omissions about the nature and status of their investments as



> well as by repaying earlier, disgruntled
> investors with funds from new investors.

Indictment ¶ 3.

All six defendants are charged with eight substantive counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. The alleged wire communications underlying these counts occurred from October 10, 1996 through May 22, 1997. Defendants Peitz, Benson, Loutos, and Paladino are also charged with a conspiracy in violation of 18 U.S.C. § 1956(h) under which they agreed to (1) engage in wire fraud violations that were designed to conceal the source and ownership of unlawful proceeds in violation of 18 U.S.C. § 1956(a) and (2) engage in monetary transactions in criminally derived property with a value greater than $10,000 in violation of 18 U.S.C. § 1957(a). The conspiracy allegedly began no later than October 1994 and continued until at least June 1998. The four alleged conspirators are also charged with four substantive counts of violating 18 U.S.C. §§ 1957 and 2 and two substantive counts of violating 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

In June 1998, the Securities and Exchange Commission ("SEC") filed a civil action in the Northern District of Texas alleging that certain defendants had defrauded investors utilizing a fictitious "prime bank security" investment that never existed. Law, Iles, Peitz, and Benson were named as defendants in that action, as well as was James Wardell. Paladino and various entities were named as relief defendants. A

judgment was obtained against all defendants and relief defendants and Michael Quilling was appointed as receiver to obtain and conserve funds on the investors' behalf. When the indictment was returned in the present case, the SEC issued a litigation release stating "[t]he indictment is based on the same conduct alleged in a civil action brought by the Commission's Forth Worth District Office in June of 1998."

In January and February 2002 at the SEC's Forth Worth, Texas offices, defendant Loutos served or attempted to serve subpoenas duces tecum on SEC attorneys Douglas Gordimer, Jeffery B. Norris, and Spencer B. Barasch, and the "Keeper of Records."[1] The subpoenas request all SEC conclusions, determinations, or pronouncements regarding or relating to Loutos's position, role in, and/or knowledge of the scheme to defraud alleged in the present criminal case and the SEC civil case. The subpoenas also request any referrals and/or transmittals related to criminal prosecution that the SEC made to the Department of Justice regarding the two cases. This latter request is not specifically stated to be limited to Loutos. The SEC itself has moved to

---

[1] Neither side provides a copy of the subpoenas. It is unclear if the person named in the subpoena was the Forth Worth Keeper of Records or the Keeper of Records for the SEC generally. The SEC concedes that Gordimer has been adequately served. It apparently disputes whether the others have been adequately served. Loutos contends that an assistant United States Attorney, speaking on behalf of the SEC, represented that service at the Fort Worth SEC offices would be considered acceptable service on Norris and Barasch. For purposes of today's ruling, it is sufficient that at least one of the SEC attorneys has been adequately served. It need not be decided if Norris and Barasch were also adequately served.

quash the subpoenas. In response thereto, defendant appears to narrow his request to those documents specifically addressing whether Loutos should be included as a defendant in the civil action and any recommendation regarding pursuing criminal charges against Loutos. Based on purported conversations with Norris and Quilling, Loutos assumes that any determinations or recommendations were that Loutos should not be named as a civil or criminal defendant.

The SEC contends the subpoenas should be quashed because they should have been served on the SEC itself in Washington, D.C. or its General Counsel located in Washington, D.C. Alternatively, the SEC contends the requested documents are not relevant and outside the scope of permissible discovery under Fed. R. Crim. P. 17(c). If those arguments were to be rejected, the SEC also indicates that the documents are likely not subject to disclosure because privileged. In its opening brief, the SEC represented that no formal findings regarding Loutos's guilt or innocence existed, but left open the possibility that internal memoranda on that subject might exist. In its reply, the SEC contends that no documents responsive to Loutos's request even exist. That last representation, though, may be based on an overly narrow view of Loutos's request.

As to investigations pursuant to the Securities Exchange Act of 1934, SEC regulations provide:

> Information or documents obtained by officers or employees of the Commission in the course of any examination or investigation . . .

shall, unless made a matter of public record, be
deemed confidential. Except as provided by 17
C.F.R. 203.2, officers and employees are hereby
prohibited from making such confidential
information or documents or any other non-public
records of the Commission available to anyone
other than a member, officer or employee of the
Commission, unless the Commission or the General
Counsel, pursuant to delegated authority,
authorizes the disclosure of such information or
the production of such documents as not being
contrary to the public interest. Any officer or
employee who is served with a subpoena requiring
the disclosure of such information or the
production of such documents shall appear in
court and, unless the authorization described in
the preceding sentence shall have been given,
shall respectfully decline to disclose the
information or produce the documents called for,
basing his or her refusal upon this section. Any
officer or employee who is served with such a
subpoena shall promptly advise the General
Counsel of the service of such subpoena, the
nature of the information or documents sought,
and any circumstances which may bear upon the
desirability of making available such information
or documents.

17 C.F.R. § 240.0-4. An identical provision applies to investigations pursuant to the Securities Act of 1933. See 17 C.F.R. § 230.122.[2]

United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), was a state habeas corpus case in which a subpoena duces tecum was served on an FBI agent. On instructions from the United States Attorney General, the FBI agent declined to provide the documents to the habeas petitioner and the District Court found the agent to be in contempt. The Attorney General and FBI

---

[2]The referenced exception contained in 17 C.F.R. § 203.2 is limited to disclosures to specified persons and entities. See 17 C.F.R. § 240.24c-1(b).

agent were acting pursuant to a regulation (Dept. of Justice Order No. 3229 (May 2, 1946)) issued under the authority of 5 U.S.C. § 22 (1951).[3] The Supreme Court reversed the contempt finding, holding that the Attorney General had authority under § 22 to issue regulations concerning the custody, use, and preservation of records, including prohibiting one of his agents from disclosing documents without the Attorney General's approval. 340 U.S. at 468-70. Because the Attorney General himself was not before the court, the Supreme Court did not reach the issue of the propriety of withholding the particular documents that were requested. See id. at 467. Following Touhy, some courts have held or indicated that, when an agency has a regulation similar to that involved in Touhy, a subpoena must be served on the agency employee having authority to approve disclosure of the documents, or at least served on the agency itself at its headquarters. See Seafirst Corp. v. Boyd, 1985 WL 188558 *3 (W.D. Wash. Aug. 29, 1985) (collecting cases). Contra NLRB v. Capitol Fish Co., 294 F.2d 868, 873-74 (5th Cir. 1961); F.A.C., Inc. v. Cooperativa De Seguros De Vida, 188 F.R.D. 181,

---

[3]Section 22 was subsequently amended and recodified as 5 U.S.C. § 301. Section 301 currently provides: "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of his records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public." The last sentence was not included in § 22 at the time Touhy was decided.

183-84 (D.P.R. 1999); Ghandi v. Police Department of City of Detroit, 74 F.R.D. 115, 121-22 (E.D. Mich. 1977).

Even assuming they correctly state the current law, the lower court cases cited by the SEC are all distinguishable from the present case. In Seafirst, the pertinent regulation provided that the party requesting materials must submit directly to the Comptroller of the Currency a request to grant authority to release the materials. See Seafirst, 1985 WL 188558 at *2-3 (applying 12 C.F.R. § 4.19 (1985)). Marcoux v. Mid-States Livestock, 66 F.R.D. 573 (W.D. Mo. 1975), also involved the Comptroller of the Currency and 42 C.F.R. § 4.19. See id. at 577. Similarly, in Cates v. LTV Aerospace Corp., 480 F.2d 620 (5th Cir. 1973), regulations provided that the document had to be requested from the Secretary of the Navy. See id. at 622-23 & n.3 (citing 32 C.F.R. §§ 720.30(a), 720.31(a)). Unlike these three cases, the SEC regulations provide that the employee served with the subpoena is to forward the pertinent information to the Commission's General Counsel along with the employee's views of the desirability of releasing the materials. The Commission or General Counsel then advises the employee as to whether to disclose the materials. See 17 C.F.R. §§ 240.0-4, 230.122. Nothing in the SEC regulations provide that the party seeking the material may or must make the request directly to the Commission or General Counsel. To the contrary, the regulation indicates that the subpoena may be served directly on a lower level employee and that employee will either provide the materials or

report the Commission's decision to preclude disclosure. Loutos's service of a subpoena upon an SEC attorney in Texas was consistent with the SEC's regulations.

The present case is also distinguishable from Touhy. In Touhy, the FBI agent himself, represented by the United States Attorney, reported that he was instructed not to disclose the materials. Here, however, the Commission has voluntarily appeared in this court to challenge the subpoena. Although the subpoenas were directed to three SEC attorneys and a Keeper of Records, none of them has appeared in court to decline to provide the materials or to move to quash the subpoenas. Instead, the SEC has chosen to bring the motion to quash in its own name. Therefore, even if the regulations had required the SEC's presence, the SEC has chosen to appear on its own behalf to directly express its views, which would be sufficient to bring the merits of disclosure before this court. Cf. United States v. Reynolds, 345 U.S. 1 (1953); Rosee v. Board of Trade of City of Chicago, 35 F.R.D. 512, 514 (N.D. Ill. 1964); Denny v. Carey, 78 F.R.D. 370, 372 (E.D. Pa. 1978). See also Alexander v. FBI, 186 F.R.D. 66, 69-70 (D.D.C. 1998) (Touhy holding does not apply to cases in which the United States is a party).

Having resolved that the merits of the subpoena are properly before this court, the merits do not presently raise any difficult question. Norris states in a declaration that he was trial counsel in the civil action, but that he received the case after others had investigated. At that point, it was not being

considered whether to civilly proceed against Loutos. Therefore, Norris expressly states that he did not prepare any written (or even oral) findings regarding Loutos's culpability or liability under federal securities laws. He also states that he has "no knowledge of any Commission attorney or employee having prepared any such oral or written findings, recommendations, or conclusions regarding Peter Loutos."[4]

Obviously, if no responsive documents exist, no documents need be provided in response to the subpoenas. However, it is not absolutely clear that no responsive documents exist. As trial attorney in the civil proceeding, presumably Norris would have been provided with any memoranda regarding liability or nonliability that were prepared as part of the SEC's investigation in preparation for filing a civil complaint. But even that is not absolutely clear. Also, it is not clear that Norris would have knowledge of any recommendations regarding criminal prosecution that may have been provided to the United States Attorney. Additionally, it is unclear if the SEC now contends no responsive documents exist because it views the subpoenas as being limited to documents created by Norris himself.

---

[4]Loutos's attorney provides an affidavit stating that Norris told him that such findings existed. Norris denies having made such statements to Loutos's attorney. But regardless of any prior representations, Norris now states that no such findings exist. Neither he, the SEC, nor any other SEC employee can be compelled to produce documents that they insist do not exist.

considered whether to civilly proceed against Loutos. Therefore, Norris expressly states that he did not prepare any written (or even oral) findings regarding Loutos's culpability or liability under federal securities laws. He also states that he has "no knowledge of any Commission attorney or employee having prepared any such oral or written findings, recommendations, or conclusions regarding Peter Loutos."[4]

Obviously, if no responsive documents exist, no documents need be provided in response to the subpoenas. However, it is not absolutely clear that no responsive documents exist. As trial attorney in the civil proceeding, presumably Norris would have been provided with any memoranda regarding liability or nonliability that were prepared as part of the SEC's investigation in preparation for filing a civil complaint. But even that is not absolutely clear. Also, it is not clear that Norris would have knowledge of any recommendations regarding criminal prosecution that may have been provided to the United States Attorney. Additionally, it is unclear if the SEC now contends no responsive documents exist because it views the subpoenas as being limited to documents created by Norris himself.

---

[4]Loutos's attorney provides an affidavit stating that Norris told him that such findings existed. Norris denies having made such statement's to Loutos's attorney. But regardless of any prior representations, Norris now states that no such findings exist. Neither he, the SEC, nor any other SEC employee can be compelled to produce documents that they insist do not exist.

Even if there are no responsive documents, the SEC (either directly or through Gordimer, Norris, or Barasch) should formally respond to the subpoena by stating that there are no responsive documents. Therefore, the SEC shall inquire as to all appropriate personnel regarding whether any written documents were prepared in which the question of Loutos's civil or criminal liability related to FLP Capital, Active International, Inc. or Lennox Investment Group, Ltd. was addressed. If it is determined that no such documents exist, the SEC or one of the subpoenaed attorneys shall respond to Loutos by so stating. If it is found that such documents exist, then the SEC or one of the subpoenaed attorneys shall provide the documents and/or a privilege log identifying each withheld document and the reason for withholding it.[5] If there are responsive documents that are withheld, Loutos will thereafter have to bring a motion to enforce the subpoena to the extent he believes documents are wrongfully withheld.[6]

On March 19, 2002, Loutos filed two motions without noticing them for presentation. His motion for evidentiary

---

[5]Since no specific documents have yet been identified, any issues as to relevance, the scope of a Rule 17 subpoena, and privilege are not yet ripe for consideration.

[6]To the extent that issues of privilege or relevance are subsequently raised before this court, the SEC must provide a representation, supported by declaration or affidavit, regarding whether it or any of its employees should be considered part of the "prosecution team" in the criminal case. See United States v. Peitz, 2002 WL 226865 *3 (N.D. Ill. Feb. 14, 2002) ("Peitz I"). The United States Attorney will also be required to present his position as to that issue.

hearing and/or in-camera inspection requests that any responsive documents be provided to the court for in-camera inspection and, if necessary, seeks a hearing on the disputed conversation between Loutos's attorney and Norris. Both those issues are moot in light of the court's ruling on the motion to quash subpoenas. Any issue as to the need for an in-camera inspection can be raised after the SEC responds to the subpoena as required by today's order.

The other motion seeks to require the government to produce pursuant to Fed. R. Crim. P. 16 and/or Brady v. Maryland. Peitz I makes clear the government's obligation to provide Brady material and it is assumed that the government recognizes its continuing obligation to provide such material. It is also assumed that, following Peitz I, the government has carefully considered whether the SEC is part of the prosecution team and whether that requires that further documents be disclosed. At this time, this motion will be denied without prejudice to raising further issues, if necessary, after the SEC responds to the subpoena.

IT IS THEREFORE ORDERED that the motion to quash subpoenas duces tecum [66] is denied. Defendant Loutos's motion for evidentiary hearing and/or in-camera inspection is denied without prejudice. Defendant Loutos's motion to produce pursuant to Rule 16 and/or Brady v. Maryland is denied without prejudice. By April 10, 2002, the Securities and Exchange Commission or one

of its subordinates upon whom a subpoena was served shall respond as heretofore described.

ENTER:

/s/ William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: MARCH 21, 2002