UNITED STATES OF AMERICA, )
)
           Plaintiff, )
)
    v. ) No. 01 CR 852-1, 2, 4, 5, 6
)
FRANK L. PEITZ, DANIEL B. ) (On limited remand from
BENSON, ROBERT D. ) the United States Court
PALADINO, RANDALL W. LAW, and ) of Appeals for the Seventh
MONICA M. ILES, ) Circuit. Appeal Nos.
) 03-2296, 03-2383-86)
           Defendants. )

## **MEMORANDUM OPINION AND ORDER**

### **I.**

Following a jury trial, defendants Frank Peitz, Daniel
Benson, Robert Paladino, Randall Law, and Monica Iles were found
guilty on all counts but one. All were found guilty of eight
substantive counts of wire fraud in violation of 18 U.S.C.
§ 1343. Defendants Peitz, Benson, and Paladino were found guilty
of a conspiracy in violation of 18 U.S.C. § 1956(h) under which
they agreed to (1) engage in wire fraud violations that were
designed to conceal the source and ownership of unlawful proceeds
in violation of 18 U.S.C. § 1956(a) and (2) engage in monetary
transactions in criminally derived property with a value greater
than $10,000 in violation of 18 U.S.C. § 1957(a). Peitz, Benson,
and Paladino were also found guilty of four substantive money

laundering counts of violating 18 U.S.C. § 1957 and two
substantive money laundering counts of violating 18 U.S.C.
§ 1956(a)(1)(B)(i). The scheme in which defendants were involved
resulted in investors losing approximately $11,000,000. A
receiver appointed at the request of the Securities and Exchange
Commission was able to recover only $860,000.

All defendants except Benson objected to the Sentencing
Guidelines calculations contained in their presentence reports
("PSR"), defendant Paladino moved for a downward departure, the
government raised objections as to each PSR, and the government
moved for upward departures as to each defendant. Following a
hearing on the various sentencing issues, the court determined
the applicable sentencing ranges and denied all departure
requests. See United States v. Peitz, 2003 WL 1964241 (N.D. Ill.
April 25, 2003) (summarizing rulings made at the hearing). The
Sentencing Guidelines range for each defendant and the custody
and supervised release term actually imposed on each defendant
were as follows.[1] With a Guidelines range of 168-210 months,
Peitz was sentenced to 188 months' incarceration to be followed
by 5 years' supervised release on the wire fraud counts and three
years supervised release on the money laundering counts to run
concurrently. With a Guidelines range of 151-188 months, Benson
was sentenced to 188 months' incarceration to be followed by 5
years' supervised release on the wire fraud counts and three
years supervised release on the money laundering counts to run

---

[1]The sentences for each count were concurrent with each
other. Law's sentence was consecutive to a state sentence he was
already serving.

concurrently. With a Guidelines range of 70-87 months, Paladino was sentenced to 72 months' incarceration to be followed by 5 years' supervised release on the wire fraud counts and three years supervised release on the money laundering counts to run concurrently. With a Guidelines range of 78-97 months, Law was sentenced to 84 months' incarceration to be followed by 5 years' supervised release. With a Guidelines range of 78-97 months, Iles was sentenced to 78 months' incarceration to be followed by 3 years' supervised release. Peitz, Benson, and Paladino were ordered to pay $11,419,970 in restitution. Law and Iles were ordered to pay $11,109,970 in restitution. The sentences were imposed on April 30, 2003, before the Seventh Circuit or Supreme Court held that the Sentencing Guidelines were unconstitutional if treated as mandatory and based on factual findings made by the court. See United States v. Booker, 375 F.3d 508 (7th Cir. 2004), aff'd & remanded, 125 S. Ct. 738 (2005). See also Blakely v. Washington, 542 U.S. 296 (2004).

On direct appeal, the Seventh Circuit affirmed the convictions of all five defendants. United States v. Paladino, 401 F.3d 471, 474-77 (7th Cir. 2005). Two challenges to the Guidelines calculations were denied. See id. at 479-80. The Seventh Circuit, however, ordered a limited remand for the purpose of determining whether this court would have imposed a different sentence had it been known, in light of the Supreme Court's decision in Booker, that the Guidelines were not mandatory. See Paladino, 401 F.3d at 481-85.

Following the remand from the Seventh Circuit, the parties submitted briefs addressing the question of whether, in

- 3 -

light of Booker, any defendant should receive a different
sentence.   Defendants themselves were not brought before
the court, but defendants themselves were permitted to submit
letters to the court and counsel were permitted to make oral
presentations in support of their written arguments.   Such a
procedure is consistent with the Paladino decision.   See
Paladino, 401 F.3d at 484 (quoting United States v. Crosby,
397 F.3d 103, 120 (2d Cir. 2005)).   Defendants were permitted to
proffer any additional evidence that they might desire to submit.
The government argues that the decision as to whether a different
sentence would have been imposed should be limited to evidence
that was before the court at the time of the original sentencing.
The court has not so limited the defendants.   If this court
indicates that it would impose a different sentence, the existing
sentence will be vacated and a new sentencing hearing will be
held.   Such a hearing would not be limited to information and
evidence previously before the court.   Also, there may be
information that is relevant post-Booker, but which defendants
did not previously submit because not relevant to Guidelines
sentencing.   In any event, defendants apparently have not
proffered any new information or evidence other than their
personal appeals that make some reference to post-incarceration
conduct and changes of heart.   All the information and arguments
that have been submitted will be considered.

## II.

Before turning to the particulars of each defendant, one
general issue will be addressed.   The parties dispute the role

that the Guidelines should play under the post-Booker regime. Defendants contend the Guidelines are just one of many factors to consider under 18 U.S.C. § 3553(a). Cf. United States v. Ranum, 353 F. Supp. 2d 984, 986-87 (E.D. Wis. 2005). The government contends that the Guidelines range should still be applied unless unusual or exceptional circumstances exist for imposing a sentence outside the Guidelines range. Cf. United States v. Wilson, 350 F. Supp. 2d 910, 912, reconsideration denied, 355 F. Supp. 2d 1269 (D. Utah 2005).

In Booker, the Supreme Court held that, absent a defendant's waiver of factfinding by a jury, it would be unconstitutional to apply mandatory Sentencing Guidelines ranges determined in whole or in part by factual findings made by a judge. Booker, 125 S. Ct. at 748-56. To avoid a constitutional infirmity, the Supreme Court severed and excised the provision of the Guidelines (18 U.S.C. § 3553(b)(1)) that required sentencing courts to impose a sentence within the applicable Guidelines range (absent adequate grounds for departure). Booker, 125 S. Ct. at 764. Following Booker, facts affecting the statutory sentencing range still must be proved beyond a reasonable doubt or be admitted by the defendant (in a plea agreement or otherwise). Facts establishing the nonmandatory Guidelines sentencing range may still be found by the sentencing court by a preponderance of the evidence. McReynolds v. United States, 397 F.3d 479, 481 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005); United States v. Smith, 359 F. Supp. 2d 771, 773 (E.D. Wis. 2005). The Sentencing Guidelines are not mandatory and the sentencing court retains authority to sentence within the

applicable statutory range. Booker, 125 S. Ct. at 765-67; United States v. Schlifer, 403 F.3d 849, 853 (7th Cir. 2005). "As a practical matter, . . . sentences would be determined in the same way [as before Blakely and Booker]; the only change would be the degree of flexibility judges would enjoy in applying the guideline system." McReynolds, 397 F.3d at 481.

Booker did not hold the provisions of 18 U.S.C. § 3553(a) to be unconstitutional. In exercising its discretion, the sentencing court must take into consideration the factors set forth in § 3553(a). That statute includes the overall guide that the sentence imposed be "sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553(a)(2). Subsection (a)(2) provides that the court shall consider:

> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). Other factors listed in § 3553(a) are the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the Guidelines ranges and options; Guidelines policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims of the offense.

In <u>United States v. Dean</u>, ___ F.3d ___, 2005 WL 1592960 (7th Cir. July 7, 2005), the Court of Appeals for the Seventh Circuit recently provided guidance for the application of factors in § 3553(a) and sentencing within and outside the Sentencing Guidelines range. <u>See also</u> <u>United States v. Mykytiuk</u>, ___ F.3d ___, 2005 WL 1592956 (7th Cir. July 7, 2005).

> Section 3553(a), unlike the guidelines themselves after <u>Booker</u>, is mandatory. <u>United States v. Booker</u>, <u>supra</u>, 125 S. Ct. at 764-65. The sentencing judge cannot, after considering the factors listed in that statute, import his own philosophy of sentencing if it is inconsistent with them. And therefore he can, as a matter of prudence, unbidden by either party, do what Dean wants him to do--write a comprehensive essay applying the full panoply of penological theories and considerations, which is to say everything invoked or evoked by section 3553(a)--to the case before him.
> But that is not required; like Chief Judge Randa in the present case, the sentencing judge can discuss the application of the statutory factors to the defendant not in checklist fashion but instead in the form of an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant. <u>United States v. Hadash</u>, 408 F.3d 1080, 2005 WL 1250331, at *3 (8th Cir. May 27, 2005); <u>United States v. Mares</u>, 402 F.3d 511, 518-20 (5th Cir. 2005). "Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." <u>United States v. George</u>, 403 F.3d 470, 472-73 (7th Cir. 2005). This shortcut is justified by the indeterminate and interminable character of inquiry into the meaning and application of each of the "philosophical" concepts in which section 3553(a) abounds.

\* \* \*

> Our focus thus far has been on cases in which the sentencing judge is minded to impose a sentence outside the guidelines range. Recognizing that the guidelines are promulgated

and continually revised by an agency staffed by experts (the Sentencing Commission), the court in United States v. Mares, supra, 402 F.3d at 519, said that "if the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines . . . . When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required." But the defendant must be given an opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence, for it is possible for such a variant sentence to be reasonable and thus within the sentencing judge's discretion under the new regime in which the guidelines, being advisory, can be trumped by section 3553(a), which as we have stressed is mandatory. Simon v. United States, 361 F. Supp. 2d 35, 39-41 (E.D.N.Y. 2005); United States v. Kelley, 355 F. Supp. 2d 1031, 1035-37 (D. Neb. 2005); United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2005).

Dean, 2005 WL 1592960 at *4-5.

The sentencing range as determined under the Guidelines will be the starting point for imposing a sentence. Possible departures under the Guidelines must also be considered. In the present case, the sentencing ranges have already been established[2] and it has already been determined that no grounds for a Guidelines departure exist. Therefore, as to each defendant, it must be considered whether good reason exists to impose a sentence outside the Guidelines range. It must be considered whether the generalized and necessarily imprecise and

---

[2]Peitz points to an error regarding a statutory maximum with respect to the wire fraud counts and the government concedes there was error. That issue is separately addressed in § III infra.

limited Guidelines failed to result in an adequate implementation of § 3553(a)'s purposes and factors as regards each individual defendant under consideration.

In determining whether good reason exists to impose a sentence outside the Guidelines sentencing range, the particulars of the defendant's crime and background will have to be considered. In most cases, the Guidelines will adequately take these factors into account. In some cases, they will not. Additionally, when considering whether good reason exists to sentence outside the Guidelines range, the court will have greater latitude to consider the personal characteristics of the defendant than are available under the Guidelines.

## III.

The substantive wire fraud and money laundering counts in this case occurred in 1996 and 1997. Peitz was sentenced to 188 months' incarceration on each of eight wire fraud counts, the conspiracy count, and the two § 1956 counts, and 120 months' incarceration on each of the four § 1957 counts, all to run concurrently. Peitz complains that this was improper in that, as of 1997, the maximum sentence for a wire fraud conviction was 5 years' incarceration (cumulatively 40 years) unless the violation affected a financial institution. If the violation affected a financial institution, the maximum statutory sentence was 30 years' incarceration (cumulatively 240 years). See 18 U.S.C. § 1343 (1997). However, affecting a financial institution was not charged or found by the jury. The government concedes that the statutory maximum for each wire fraud count was 5 years.

- 9 -

Having a 30-year statutory maximum would also have been the basis in this case for imposing a 5-year period of supervised release based on a Class A felony instead of the 3-year period for a Class D felony. See 18 U.S.C. §§ 3581(b), 3583(b); U.S.S.G. § 5D1.2(a). The PSR's for each of the defendants assumed the statutory maximum for the wire fraud charges was 30 years (and the defendants' conduct did adversely affect a financial institution). No defendant nor the government raised this error prior to sentencing. For each defendant, the sentence on each wire fraud charge exceeded the 5-year maximum and every defendant except Iles received a sentence that included five years' supervised release. Apparently, the only defendant to raise this issue on appeal was Peitz, who contended it was plain error. The government conceded it was error, but argued it was harmless because 188 months' incarceration was imposed on the § 1956 money laundering counts also (which have a 20-year maximum for each count). The government did concede that Peitz's supervised release should have been only 3 years. The Seventh Circuit did not address this issue on appeal. See Paladino, 401 F.3d at 479-80. However, the only issue before this court on the limited remand is whether a different sentence would have been imposed had this court known the Guidelines are not binding.

Peitz now argues that his Guidelines sentencing range is incorrect because it incorrectly assumes a 30-year maximum for the wire fraud charges. His sentencing range was based on a total offense level of 35 for the wire fraud charges. The total offense level for the money laundering charges was 34. See Peitz, 2003 WL 1964241 at *1. He contends that the wire fraud

- 10 -

sentencing range should have been limited to a maximum 60 months and that he instead should have been sentenced based on the 34 total offense level, which would have been a 151-188 month sentencing range. Peitz's contention is incorrect. If he had been convicted on only one count of wire fraud and no other offense, his sentencing range would be 60 months. See U.S.S.G. § 5G1.1(a). A different rule applies to convictions on multiple counts. Assuming there are sufficient counts to reach the sentencing range without violating the statutory maximum for individual counts, the applicable Guideline sentencing range is still calculated the same, but applied by stacking consecutive sentences. See id. § 5G1.2(d). In Peitz's case, the 188-month sentence could have been reached by imposing three consecutive terms of 60 months' incarceration for three wire fraud counts and 8 months' incarceration on one or more other counts to run consecutive to the aforementioned three consecutive wire fraud counts. Moreover, the 188-month terms imposed on the money laundering counts were lawful. Similarly, the other defendants each could have had an appropriate combination of consecutive and concurrent sentences in order to achieve the total incarceration to be imposed.

The sentences for all defendants could be modified to avoid the sentences on individual wire fraud counts that are in excess of the 60-month statutory maximum. The government concedes that the modifications for individual counts should be made for all defendants. Such changes would not affect the total terms of incarceration. As to all defendants, except Iles whose term of supervised release is already 3 years, the term of

supervised release could be reduced to 3 years.  The version of
the Rules of Criminal Procedure applicable to this case do not
permit this court to make such corrections at this time.  See
Fed. R. Crim. P. 35, 36.  The limited remand also does not permit
the court to actually change any sentence at this time.  If,
following today's ruling, the Seventh Circuit remands the case to
modify the sentences to correct the inaccurate assumptions about
the wire fraud statutory maximums, the court will do so at that
time.  Otherwise, if cognizable on such a motion, defendants
would have to bring § 2255 motions in order to seek correction of
their sentences.

## IV.

### A.  Peitz

Peitz argues that he should be sentenced to less than the
Guidelines range based on facts that did not affect his total
offense level under the Guidelines.  He contends the court should
take into consideration that he received approximately $2,500,000
of the proceeds, which is about half of what Benson received and
substantially less than the $11,000,000 plus of losses resulting
from the entire scheme that was taken into consideration under
the Guidelines.  He also contends that it should be taken into
account that, although 4 levels were added for his role as a
leader of the wire fraud scheme, he did not remain a leader
throughout the entire scheme.  He further contends that it should
be considered that his abuse of a position of trust related to
only part of the scheme and not the entire scheme.  Other than a
present expression of remorse, see Letter from Peitz dated

- 12 -

May 23, 2005, Peitz points to nothing from his personal background that would support sentencing him below his Guidelines sentencing range. The personal history contained in his PSR has been examined and the court has found nothing that requires particular consideration regarding a possible sentence outside the Guidelines sentencing range.

The factors cited by Peitz do not provide a good reason to sentence him outside his Guidelines range. Peitz was the principal organizer of the scheme. He organized schemes that were designed to cheat investors out of more than the approximately $11,000,000 that was actually lost. That Peitz was not directly involved in every aspect and stage of the schemes was not Peitz's choice. He endeavored to remain involved in the schemes, but was closed out by Benson. When there are multiple participants in a scheme, it is certainly no surprise that no individual receives the entire benefits of the scheme. Peitz, however, was a member and organizer of a group endeavor--one that was found to be a conspiracy. The court agrees with the Guidelines' principle that a member of a group activity be held responsible for all the losses resulting from that activity. Peitz was not someone on the fringes who might be considered less responsible. While Benson received a larger amount of proceeds and remained in the scheme for a longer period of time, he was less of a leader and organizer than Peitz. Thus, it was fair to give both Peitz and Benson the same sentence. Now knowing that the Guidelines are not mandatory, and even taking into consideration Peitz's present and belated expression of remorse, the court would not give Peitz a different sentence.

None of the particular facts about Peitz's involvement in the offenses or his background, either viewed separately or as a whole, support that the Guidelines sentencing range fails to provide a reasonably adequate estimate of the sentence appropriate to serve the purposes set forth in 18 U.S.C. § 3553(a)(2) or that that range was reached without taking adequate account of the factors required to be considered under § 3553(a).

## B. Benson

Benson presents no specific argument as to why his sentence should be any different than was previously imposed. As indicated above, it is appropriate to give Benson and Peitz the same sentence based on Benson's lengthier involvement and receipt of additional proceeds, but his lesser role as a manager instead of a leader.[3] Benson's PSR has been examined. Limited information about his family background shows that his parents were divorced when he was young, he lost contact with his father shortly thereafter, his mother remarried a number of times, and that, since high school, he has had little contact with his mother, stepfather, or siblings. There is undetailed information about abuse. The background information about Benson is not particularly remarkable. The court finds no information that would be good reason to sentence Benson outside his Guidelines sentencing range.

---

[3]The 1-level difference between a manager and leader is why Benson's Guidelines sentencing range is lower than Peitz's. See Peitz, 2003 WL 1964241 at *1.

None of the particular facts about Benson's involvement in the offenses or his background, either viewed separately or as a whole, support that the Guidelines sentencing range fails to provide a reasonably adequate estimate of the sentence appropriate to serve the purposes set forth in 18 U.S.C. § 3553(a)(2) or that that range was reached without taking adequate account of the factors required to be considered under § 3553(a).

## C. Paladino

Paladino was sentenced to 72 months' incarceration, the shortest sentence of any of the five defendants who went to trial. That sentence is 6 months less than Iles's sentence and 12 months less than Law's sentence. Unlike Iles and Law, Paladino was involved in the money laundering offenses as well as the wire fraud offense. Paladino obtained $1,078,182 of the proceeds of the fraud. Only $6,084 of the proceeds he obtained was recovered by the receiver. Paladino contends that three factors support sentencing him below his Guidelines sentencing range: (a) his cooperation with the SEC investigation; (b) his character and family background; and (c) his limited involvement in the offense. At the time of sentencing, the latter two were argued as grounds for a downward departure. Items (a) and (c) were also argued as part of the reasons for a reduction based on a diminished role in the offense and as grounds for sentencing Paladino on the low end of his sentencing range.

When the SEC was conducting its civil investigation, Paladino provided some assistance in that investigation. He informally provided information, he testified at a deposition

(which was used against him at his criminal trial),[4] and he aided the SEC and a receiver in locating assets. As to the criminal charges, Paladino and the government discussed a possible plea agreement, but no agreement was reached and Paladino did not provide any actual assistance to the prosecution. No basis existed for a downward departure pursuant to U.S.S.G. § 5K1.1 because the government did not move for a such a departure and Paladino did not provide substantial assistance in the prosecution nor, apparently, the criminal investigation. He now contends that, not being limited by the Guidelines provisions regarding downward departures, the court can take into account the cooperation with the SEC investigation. Paladino also places weight on the view of the SEC attorney involved in the civil investigation that he did not recommend criminal charges against Paladino.

In sentencing Paladino near the low end of his sentencing range, it was considered that he had provided some cooperation with the civil investigation. It was also considered that he had testified at trial and essentially admitted some of the allegations against him. While admitting facts against his interest, Paladino was still attempting to avoid a conviction, which was certainly within his rights. Under the Guidelines, if Paladino had fully accepted responsibility, he would have received a 2-level reduction. See U.S.S.G. § 3E1.1(a). Assuming all other aspects of his Guidelines calculation remained the

---

[4]Paladino also testified at trial, substantially admitting many of the government's allegations against him.

- 16 -

same, that would have reduced his total offense level to 25 and his Guideline range to 57-71 months, a range reduction of 13-16 months. Since Paladino did not actually accept responsibility, any adjustment based on his limited assistance with the civil case should be for less than 13-16 months. Sentencing Paladino toward the lower end of his Guidelines sentencing range adequately took into account his cooperation with the SEC. Based on that cooperation, the court would not reduce Paladino's sentence further knowing that the Guidelines are not mandatory.

It is argued that Paladino has an exemplary personal and family background. It is certainly commendable that Paladino has loving family relationships, but the court does not find that to be a basis for reducing his sentence. To the extent Paladino was generally of honorable and honest character, that generally goes along with the fact that he initially believed he was involved with a legitimate investment vehicle, but failed to pull out after it became evident that the investments were not legitimate. That is taken into account by the 2-level reduction for a minor role in the offense. Paladino received substantial proceeds and substantially aided the scheme even after he had information revealing the nature of the scheme. He was willing to receive dishonest proceeds that were needed to keep his business endeavors from failing. Even if his character indicates a reduced chance of recidivism, that must be balanced against an appropriate sentence for the serious crime that was committed and avoiding unwarranted disparities with other defendants. While

Paladino, Law, and Iles all had the same total offense levels,[5] Law and Iles had higher Guidelines ranges because of their higher Criminal History Category. Paladino received substantially more proceeds than the other two. While it is appropriate to sentence Paladino to less time than Law and Iles, his sentence should still remain close to that of the other two. The 72-month sentence appropriately takes into consideration Paladino's involvement, his background, and the sentences imposed on the other defendants.

Paladino also points to the difficult time that his family, particularly his wife, will have while he is away at prison. He relies on the same information that was provided at the time of sentencing. At this time, his family has already been through approximately two years of Paladino's absence. It is not unusual that a family will have difficulty when separated from an incarcerated defendant. Submissions support that Paladino's wife was likely to have more difficulty than the usual family member. It was not, however, enough to support a downward departure under the Guidelines. Given the seriousness of the offense and taking into account the greater flexibility post-Booker, still the situation would not be a basis for imposing no incarceration at all. Even if the court were to be convinced that the situation otherwise justified a substantial reduction, such as 1 or 2 years less incarceration, there would still be a

---

[5]For the wire fraud offenses, Law and Iles were actually 2 levels higher than Paladino. However, Paladino's total offense level for money laundering was equal to the wire fraud total offense levels for Law and Iles. See Peitz, 2003 WL 1964241 at *2.

4-to-5-year separation. That would not avoid the effect of a
lengthy separation. Following Booker, the court does not find
the family situation to be a reason to reduce Paladino's
sentence.

The other factor that Paladino urges the court to
consider is his diminished role in the offense. He was not
directly involved with providing false information to investors.
Also, initially, he was unaware of the fraudulent nature of the
scheme. Paladino, however, became aware of the true nature of
the scheme. He was involved in the transfer of funds and was
well aware of the scope of the scheme, including the large amount
of monies involved. Under the Guidelines, the court applied a
2-level reduction for a minor role in the offense. See U.S.S.G.
§ 3B1.2(b); Peitz, 2003 WL 1964241 at *2. The Guidelines
adequately take into account Paladino's diminished involvement in
the offense.

As the previous discussion indicates, the three factors
raised by Paladino are overlapping. Even considering the factors
together, along with all the facts and circumstances concerning
Paladino and his involvement in the offenses, the court does not
find good reason to reduce Paladino's sentence below the
Guidelines sentencing range. None of the particular facts about
Paladino's involvement in the offenses or his background, either
viewed separately or as a whole, support that the Guidelines
sentencing range fails to provide a reasonably adequate estimate
of the sentence appropriate to serve the purposes set forth in
18 U.S.C. § 3553(a)(2) or that that range was reached without

taking adequate account of the factors required to be considered under § 3553(a).

## D. Law

Law, through his attorney, argues that his 84-month sentence under the Guidelines fails to adequately take into account that, although more than $11,000,000 was lost by investors, he kept approximately $100,000 in proceeds (after splitting proceeds with Wardell and Iles) and that he had no decision-making control over other defendants. He contends that, following Booker, an appropriate sentence for him would be 60 months' incarceration. In an undated letter faxed to the court on May 16, 2005, Law himself contends that the appropriate procedure to follow is to require that all facts considered for sentencing be proved to a jury beyond a reasonable doubt. In support of this contention, Law cites to Justice Stevens' opinion in Booker, 125 S. Ct. at 755-56. Law ignores that the Booker decision is contained in part in Justice Stevens' opinion and in part in Justice Breyer's opinion. Justice Breyer's opinion contains the remedial provisions that are joined in by 5 of the justices. See Booker, 125 S. Ct. at 746, 756-57. As was set forth above, the Supreme Court resolved a constitutional problem by excising § 3553(b)(1)'s provision that the sentencing range under the Guidelines must be followed. Booker, 125 S. Ct. at 764. Since the Guidelines sentencing range is not binding, it is permissible for the sentencing court to find facts that are the basis for determining the sentencing range. McReynolds, 397 F.3d at 481. Law is not entitled to a new sentencing hearing at which facts must be proven to a jury.

At the time of sentencing, this court found that, pursuant to U.S.S.G. § 3B1.1(c), Law's total offense level should be increased 2 levels as a manager of the scheme. That adjustment was not challenged or overturned on appeal. Law marketed the investment program to brokers and investors. Although he personally received approximately $100,000 in proceeds for himself, he obtained $250,000 and split the funds with Wardell and Iles. Law was involved in marketing the investment program to brokers and investors who provided the bulk of the misappropriated investments. Law also provided misleading information to Iles that was to be passed directly to investors. Law had a knowledge and understanding of the scope and structure of the scheme. Even after the investments had been made, Law remained active in the scheme by continuing to provide assurances that the money had been invested and that returns were forthcoming. Law was fully involved in the scheme. Facts do not support reducing Law's sentence based on limited involvement; instead the court found it appropriate to increase his Guidelines offense level based on being a manager.

Although Law personally kept only $100,000 of the fraudulent proceeds, he was involved in most of the investments. Even if not following the Guidelines, the court would consider Law's crime to be one involving approximately $11,000,000 in victim losses. Law was highly culpable in this case. He was given a sentence in the low-middle part of his sentencing range. That adequately takes into account the comparatively low amount of the benefits he received. Also, Law was more culpable than Paladino in that he was involved in passing on misrepresenta-

tions. Compared to Paladino, though, Law received substantially less in benefits. Additionally, it must be considered that, unlike Paladino, Law has a prior criminal history. It was appropriate to impose a sentence on Law that is one year longer than Paladino's.

Further, the court has again examined Law's PSR and has found no good reason to impose a lower sentence. None of the particular facts about Law's involvement in the offenses or his background, either viewed separately or as a whole, support that the Guidelines sentencing range fails to provide a reasonably adequate estimate of the sentence appropriate to serve the purposes set forth in 18 U.S.C. § 3553(a)(2) or that that range was reached without taking adequate account of the factors required to be considered under § 3553(a).

## **E. Iles**

Iles argues that, following Booker, she should receive a lighter sentence--time already served is suggested--because the Guidelines provision holding her responsible for the $11,000,000 plus loss overstates her involvement. She points to the fact that she received approximately $49,000 in proceeds, which was about the same as the expenses she incurred related to the investments. She also points to the fact that she was not the organizer of the scheme and minimizes her contact with investors. A May 9, 2005 letter from one of Iles's daughters emphasizes that Iles is a loving, caring, and good person, even if naive and less inquisitive than necessary to be involved in the investment of other people's money. In a May 20, 2005 letter from Iles herself, Iles emphasizes her lack of knowledge, contending she

fully believed the investments were legitimate until she learned otherwise at trial.

The jury found that Iles had the necessary intent to be found guilty and her conviction has been affirmed on direct appeal. It must be taken as true that Iles intended to defraud the investors. Like Law, Iles did not organize the scheme. She did, however, actively promote it to brokers and investors. She was the contact for submitting paperwork and she passed on to investors many of the post-investment assurances that the investments remained safe. Iles apparently had less access to information than Law, but she had enough information to know that she was not passing on truthful information. Still, the court considered her to be somewhat less culpable than Law. That, plus the fact that she received limited proceeds were the reasons for sentencing her at the bottom of her Guidelines sentencing range. That does not mean, however, that she was unaware that she was engaged in wrongdoing nor was she unaware that large sums of money were involved. Particularly troubling with Iles is the fact that, because of a prior conviction related to marketing illegal tax shelters, she was subject to an SEC administrative order prohibiting her from engaging in this type of activity even if the investment program had been legitimate. Iles's total offense level was increased two levels based on violating this order. See U.S.S.G. § 2F.1(b)(3)(B) (1997); Peitz, 2003 WL 1964241 at *2.

Although Iles received only a limited amount of investor proceeds and did not organize the scheme, she still had an important role and was involved with investors or brokers that

were sources of a large portion of the investments. Therefore, there is a firm basis for considering the $11,000,000 plus in losses when determining a sentence for her. She is less culpable than Law and that is represented by a sentence that is 6 months shorter than Law's. As was true with Law, Iles is more culpable than Paladino, but received less benefits than Paladino. A higher sentence for Iles than Paladino is appropriate in that Iles has the past criminal history and, unlike Paladino, was violating an order prohibiting her from being involved with investment activity. The fact that Iles had previously been convicted and was violating an order related to that prior criminal activity overrides the present representations that she is a generally honest person who will not again be in trouble with the law. Following Booker, the court would still impose a sentence at the bottom end of Iles's Guidelines sentencing range. Neither Iles's arguments nor a reexamination of her PSR discloses a good reason to impose a lesser sentence.

None of the particular facts about Iles's involvement in the offenses or her background, either viewed separately or as a whole, support that the Guidelines sentencing range fails to provide a reasonably adequate estimate of the sentence appropriate to serve the purposes set forth in 18 U.S.C. § 3553(a)(2) or that that range was reached without taking adequate account of the factors required to be considered under § 3553(a).

**V.**

For the foregoing reasons, the court would not change any defendant's sentence in light of Booker. As was noted above, there was an error in imposing sentences of more than 60 months for individual wire fraud counts. The same total sentence of incarceration would be imposed, but it would be distributed differently among the counts. Also, in light of the correct statutory maximum for the wire fraud offenses, the court would sentence each defendant to three years' supervised released. All defendants, except Iles, received a supervised release sentence of five years. No defendant raised this issue at the time of sentencing. Peitz raised this issue on direct appeal, but the issue is not addressed in the Seventh Circuit's opinion. If the Seventh Circuit deems it appropriate to remand this case to change the incarceration sentence on individual counts and modify the length of supervised release, the court will take appropriate action.

IT IS THEREFORE ORDERED that, in accordance with the limited remand of the Seventh Circuit, the court finds that, taking into account that the sentencing range determined under the Sentencing Guidelines is not mandatory, the court would still impose the same total sentences of incarceration for each defendant that was previously imposed. Separate from the "Booker" issue, the court notes an incorrect statutory maximum was used when imposing sentences on individual counts. That did not affect the total sentences of incarceration, but it did

affect the length of supervised release imposed for defendants
Peitz, Benson, Paladino, and Law.

The Clerk of this Court is directed to furnish copies of
this Opinion and Order to the Clerk of the United States Court of
Appeals for the Seventh Circuit forthwith.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: JULY 27, 2005